326 So.2d 76 (1976)
Hannelore Faulk BRANDON, Appellant,
v.
James H. FAULK and Inez B. Faulk, Appellee.
No. Y-93.
District Court of Appeal of Florida, First District.
January 29, 1976.
*77 Robert J. Mayes, Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, Pensacola, for appellant.
J. LaDon Dewrell, Dewrell & Kessler, Fort Walton Beach, John C. Cooper and W. Dexter Douglass, Douglass & Powell, Tallahassee, for appellee.
BOYER, Chief Judge.
This appeal emanates from a child custody dispute. Appellant and Landis Faulk were married in 1966. The next year, their child, Angela Elizabeth Faulk, was born. In 1971 a final judgment was entered dissolving the marriage and granting to the mother permanent custody of the minor child subject to visitation privileges reserved to the child's father and paternal grandparents. The final judgment prohibited the changing of the residence of the minor child to any place outside of the First Judicial Circuit. In 1972, shortly after remarriage, appellant petitioned for permission to change the child's residence from the First Judicial Circuit. Appellees (the child's paternal grandparents) filed a petition for modification, seeking the child's custody. The trial court denied both petitions whereupon an appeal was taken to this Court which affirmed without prejudice to a renewal by appellant of her petition for modification. (See Brandon v. Faulk, Fla.App. 1st 1974, 287 So.2d 714)
In September of 1974 appellant filed a second petition for modification and appellees responded with a counter-petition. At the hearing held on those petitions it was established that appellant's new husband, Richard Brandon, owns and operates a trucking business and that in January of 1973 his primary route was changed to a run from New Orleans to San Francisco. Because of the route change Mr. Brandon was unable to spend more than a few days each month in Florida and the final judgment prohibited the changing of the child's residence outside of the First Judicial Circuit. The evidence further revealed that in order that Mrs. Brandon spend time with her husband she accompanied him on his route during 1973, being absent from the state a total of 117 days. They have now established a home in Texas. Appellant testified that in an attempt to comply with the above mentioned opinion of this Court she voluntarily allowed appellees temporary custody of the subject child until she could renew her request for permission to remove the child from the First Judicial Circuit.
Following hearings on the renewed petitions of the parties the trial judge entered the order here appealed. Rather than paraphrasing that order and summarizing the evidence giving rise thereto, we have decided to quote the order in its entirety. It provides as follows:
"This cause is again before the Court on the issues of the minor child herein, Angela Elizabeth Faulk, age 9. This Court *78 entered a final judgment on June 14, 1971, which stated in part:
`2. That the plaintiff and defendant are each fit and proper persons to have the care, custody and control of the minor child. That the defendant has acted with some impropriety and that her conduct has caused the Court some concern with respect to the custody of the child, but the weight of the evidence fails to show any parental irreponsibility and on the contrary, shows that she is a very competent and attentative mother to the child.
`3. That the parental grandparents of the minor child, namely James H. Faulk and Inez B. Faulk, have intervened in this cause seeking custody of the child. The evidence clearly shows them to be model citizens with an excellent reputation. The Court was impressed with their candor and character, and finds beyond question that they are fit and proper persons to have the custody of the child and financially able to more than adequately provide for it. However, the law is well established, and wisely so, that the best interest of a child of tender years can be served by the mother unless the mother is shown to be an improper person for such responsibility.
`... The custody of the child vested in the defendant is subject to the express limitation that she shall not change the residence of the said child from the First Judicial Circuit, and that she shall not remove the child therefrom for more than seven consecutive days at any one time without prior approval of the Court.'
"Since that time, this cause has been continuously before the Court on this issue up to the present time in which the Court heard lengthy testimony on December 13, 1974 and January 10, 1975. Both the mother and the father of the minor child have remarried. The plaintiff-mother remarried on September 15, 1972 and now resides in the State of Texas. On December 5, 1972, this Court stated:
`I want to announce once more for the record, gentlemen, that the Court entered this final judgment with some reservations and some concern, and mentioned in the judgment, without trying to be critical or overly critical, that the Court had some concern about the awarding the custody to Mrs. Brandon, and it's expressed in the judgment, and that was one of the reasons for the provisions of restricting the child to the First Judicial Circuit. And, another reason, and the judgment so states, that the grandparents are upstanding citizens in the community, and that they would be excellent people to have the custody of that child, but the Court gave all benefit of the doubt to the mother, but it had a specific purpose in limiting it to the First Judicial Circuit for residence. Now, the undercurrents  it would be my advice to all parties that undercurrents ought to be stopped. This child which all of you are so vitally interested in needs the guidance of all of you and the friendship. It's true there's some strong feelings between the parties, but no one can cure that, but this Court can cure it if it's expressed around that child, and that's the reason I gave some specific instructions for that judgment as I recall it for the order over in Milton. There would be no expression or criticism from any parents, grandparents, around that child to influence. In other words, if they want to get off and invoke the wrath of Heaven on each other, just do it out of the presence of that child because that child is entitled to grow up with a normal feeling toward its mother, father, and grandparents, and it's real simple. Now, gentlemen, the Court is not going to change that residence requirement. *79 That was a condition and it was well thought at the time, and the Court feels it's for the best interest of the child and that's the order of the Court.'
"On February 13, 1974, the petitioner-mother surrendered the temporary care and custody to the paternal grandparents, James H. Faulk and Inez B. Faulk, by written consent which was confirmed by order of this Court on February 20, 1974. Upon consideration of the evidence before the Court at this time, the Court adheres to its original findings set forth in the Final Judgment as quoted above which summarized is, that the natural mother, natural father, and paternal grandparents are all fit, competent, and proper persons to have the custody of the said child. Each parent has remarried and has an adequate home and facilities to care for the child. The Court does find from the present evidence that the petitioner-mother, during the year 1973 and until surrendering custody to the grandparents on the 13th day of February, 1974, left the child with a baby-sitter while she was on trips outside of the State of Florida for a total of one hundred and seventeen (117) days, consisting of periods of time from a minimum of seven (7) days to a maximum of twenty (20) days. The interest in this child by all of the parties is commendable and refreshing to the Court in contrast to numerous instances of disinterest by parents that confront all courts all too frequently. This Court is cognizant and appreciative of the well-established law in our state that absent other considerations, natural parents should be given preference over other relatives and third parties in the custody of minor children. It is significant, however, in this case that the grandparents place their interest in the welfare of this child, the education of this child, her health and happiness, in first priority above every other factor in life. On the other hand, the petitioner-mother does not attach the same priority. The Court finds and determines that this child is happy, well-adjusted, carefully watched and attended to, and the Court finds and so determines that the best interest and welfare of this child shall be served by vesting the permanent care, custody, and control of her in the parental grandparents. This provides an equal opportunity of accessibility to the natural mother, the natural father and through these custodians, the family ties and relationships of each parent and the grandparents can be achieved with has been an objective of this Court throughout these lengthy proceedings
"Therefore, it is ORDERED, ADJUDGED and DECREED:
"1. That the permanent care, custody and control of the said minor child is vested in the paternal grandparent's, James H. Faulk and Inez B. Faulk, subject to the express limitation that they shall not change the residence of the said child from the First Judicial Circuit, and that they shall not remove the child therefrom for more than seven (7) consecutive days without prior approval of the Court.
"2. The natural mother and the natural father shall have the right of reasonable visitation under reasonable circumstances at all times.
"3. That the natural mother shall also have the child during the third weekend of each month from 5:00 o'clock P.m. on Friday until 6:00 o'clock P.M. on Sunday, and in any month that the third weekend is not convenient, the said mother may elect a different weekend by giving the grandparents ten (10) days advance written notice.
"4. The natural mother shall have the custody of the child for the entire month of July of each year and the natural father shall have the child for one week during the summer at a time arranged with the grandparents. The reason for *80 this differential is that the Court feels that the father will have more of an opportunity to visit the child more frequently.
"DONE AND ORDERED in Chambers in Okaloosa County, Florida, this 10th day of March, 1975."
Appellant urges two points for reversal: First that the trial court erred in denying her petition for modification of the final judgment by which she sought to eliminate the restriction as to the child's residence, and second that the trial court erred in determining that there had been such a change in circumstances as to justify modification of the custody provision of the final judgment.
We recognize, as did the learned experienced trial judge, that this case, like most custody disputes, is extremely difficult and has no ideal solution. The emotions and lives of many persons are affected. However, in such situations the best interests of the minor child is of paramount consideration and is the guiding pole star. (Brust v. Brust, Fla.App. 1st 1972, 266 So.2d 400, cert. den Sup.Ct. Fla. 1972, 271 So.2d 142; Dinkel v. Dinkel, Sup.Ct.Fla. 1975, 322 So.2d 22) In reviewing orders relating to custody of minor children appellate courts are required to afford great weight to the findings and determinations of the trial court. (Dinkel v. Dinkel, supra) In light of the evidence, though the points presented are admittedly close, we do not find that the challenged restriction against changing the child's residence was either unreasonable nor an abuse of discretion. Further, we find that there was sufficient substantial competent evidence of change in circumstances and as to the best interests of the child to sustain the modification of custody. Accordingly, the order here appealed is
Affirmed.
MILLS, J., concurs.
CAWTHON, VICTOR M., Associate Judge, dissents.
CAWTHON, VICTOR M., Associate Judge (dissenting).
I respectfully dissent from the majority opinion because I consider that this court established the law of the case by saying when this case was last before it "in the absence of some circumstances making the natural mother an incompetent and unattentive mother, the normal custody would be awarded to the mother." Brandon v. Faulk, Fla.App. 1st 1974, 287 So.2d 714.
Later in the same opinion it was implied that the modification would be granted if the mother's present marriage existed until December 1, 1974.
The record shows the continued existence of the marriage and the only circumstances it reveals that would make the mother "unattentive" would be cured by the modification she requests; i.e. the removal of the residence restriction.